## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CORPORATE LAKES PROPERTY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 22-2161-KHV |
| | ) | |
| AMGUARD INSURANCE COMPANY and | ) | |
| RAPHAEL & ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Corporate Lakes Property, LLC filed suit against AmGuard Insurance Company and Raphael & Associates seeking declaratory relief on a contract for property insurance.  This matter is before the Court on Defendants AmGuard Insurance Company And Raphael & Associates' Motion For Summary Judgment On Plaintiff Corporate Lakes Property, LLC's Claim For Declaratory Judgment (Doc. #22) and Plaintiff's Motion For Summary Judgment (Doc. #24), both filed August 30, 2022.  For reasons stated below, the Court sustains defendants' motion for summary judgment and overrules plaintiff's motion for summary judgment.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51.  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251–52.

### Factual Background

The following material facts are stipulated or undisputed.

Effective April 19, 2020 through April 19, 2021, AmGuard Insurance insured Corporate Lakes under Businessowners Policy No. COBP108129.  The Policy includes coverage for the Corporate Lakes building at 6710 West 121st Street in Leawood, Kansas.  On October 25, 2020, water in a window well entered the building and damaged it ("the Loss").

The Loss resulted from an accidental discharge of water when an underground pipe

ruptured outside the building.  The pipe carried non-potable water to the fire protection and water sprinkler system in the building.  The water from the line was not drinkable or intended for everyday use and was only used if the sprinkler system was activated.  A failure of the underground pipe on the premises but outside of the building perimeter allowed water to escape from the pipe below the surface of the ground, rise to the ground surface and flow over the ground surface into a basement window well.  The water then pressed on a basement window and flowed or seeped into the building through the window, causing physical damage to the building premises.

The Policy provides that AmGuard "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  Exhibit A (Doc. #23-2) at 72 (Section I – Property, Part A. Coverage).

"Covered Property" includes "Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property.  Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph 2. Property Not Covered."  Id. at 7 (Section I – Property Coverages And Limits Of Insurance).  The Policy states that "Covered Property" does not include "Land (including land on which the property is located), water, growing crops or lawns."  Exhibit A (Doc. #23-2) at 73.

"Covered Causes Of Loss" include "[r]isks of direct physical loss unless the loss" is excluded under the policy.  Id. at 73 (Section I – Property, Part A. Coverage).  The Policy contains an exclusion for water as follows:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply

-3-

whether or not the loss event results in widespread damage or affects a substantial area.

* * *

g. Water

> (1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
>
> (2) Mudslide or mudflow;
>
> (3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
>
> (4) Water under the ground surface pressing on, or flowing or seeping through:
>
> > (a) Foundations, walls, floors or paved surfaces;
> > (b) Basements, whether paved or not; or
> > (c) Doors, windows or other openings; or
>
> (5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1) (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

Id. at 85–86 (Section I – Property, Part B. Exclusions).

Corporate Lakes timely submitted to Raphael & Associates, the third party claim administrator for AmGuard, a claim for coverage for the Loss. On behalf of AmGuard, Raphael & Associates declined coverage, noting in part that "[o]ur investigation reveals the water

-4-

infiltration into the building was caused by a failed window.  The window failed due to pressure from water escaping from under the ground surface." Exhibit B (Doc. #23-3) at 3.  After Corporate Lakes asked Raphael & Associates to reconsider its coverage position, it again declined coverage, noting in part as follows:

> Our redetermination confirms coverage does not apply to this loss.  The water infiltration into the building was caused by a failed window which failed due to pressure from water escaping from under the ground surface.  The affected line was located outside.  Our investigation previously confirmed this water loss resulted from a failed underground main water line which supplied the sprinkler system for the building.  The leaking sprinkler supply line is located outside the front elevation of the building, approximately 3-4 feet underground.  Water from the supply line escaped through to the ground then across the ground to the window well which then filled up by several feet, causing the window to fail.  The water then entered the basement of the building resulting in water damage to the entire lower level.

Exhibit C (Doc. #23-4) at 3.

On March 30, 2022, in the District Court of Johnson County, Kansas, Corporate Lakes filed this suit against AmGuard and Raphael & Associates.  Corporate Lakes asserts a claim for breach of contract against both defendants and seeks a declaration that the damage to the building is covered under the Policy.  Corporate Lakes also claims that Raphael & Associates negligently misrepresented that the damage to the building was covered under the Policy and the corresponding scope of allowable repairs.  On April 29, 2022, defendants removed the case to federal court.

## Analysis

Both parties seek summary judgment on the issue of coverage, which involves interpretation of the Policy.  Defendants assert that the loss to the building is excluded under the Policy because the water that damaged the building was (1) "surface water" and/or (2) "[w]ater under the ground surface pressing on, flowing or seeping through . . . [d]oors, windows or other

openings." Section I – Property, Part B. Exclusions, Section g(1) and (4).  Corporate Lakes argues that (1) the water was not "surface water" because it did not originate from a naturally occurring source and (2) the exclusion for water seeping through doors and windows only applies to water that is below the surface of the ground at the time it enters the covered building.

The parties agree that Kansas law applies.  The interpretation of an insurance policy, like other contracts, is a question of law.  See AMCO Ins. Co. v. Beck, 261 Kan. 266, 269, 929 P.2d 162, 165 (1996).  Terms in an insurance policy are generally given their plain and ordinary meaning unless the parties have expressed a contrary intent.  See Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co., 22 Kan. App. 2d 944, 948, 925 P.2d 452, 456 (1996).  The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.  Farm Bureau Mut. Ins. Co. v. Winters, 248 Kan. 295, 300, 806 P.2d 993, 996 (1991).  To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language.  Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co., 248 Kan. 657, 659, 810 P.2d 283, 285 (1991).  Where the terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail.  Id.  If the policy is not ambiguous, the Court must enforce it according to its terms.  See Am. Media, Inc. v. Home Indem. Co., 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983).

As the insured, Corporate Lakes has the burden to prove coverage under the policy.  See Shelter Mut. Ins. Co. v. Williams, 248 Kan. 17, 29–30, 804 P.2d 1374, 1383 (1991).  AmGuard and Raphael & Associates bear the burden to show that the loss is excluded by a specific policy provision.  See id.  Policy exclusions generally require a "narrow construction on the theory that

the insurer, having affirmatively expressed coverage through broad promises, assumes the duty to define any limitations on that coverage in clear and explicit terms." Marquis v. State Farm Fire & Cas. Co., 265 Kan. 317, 327, 961 P.2d 1213, 1220–21 (1998).

As noted above, defendants argue that the loss to the building is not covered based on the water exclusion which excludes losses caused by (1) "surface water" and (2) "[w]ater under the ground surface pressing on, flowing or seeping through . . . [d]oors, windows or other openings." The Court addresses each subpart in turn.

## I.      Exclusion For Losses Caused By Surface Water

The Policy excludes coverage for loss or damage caused directly or indirectly by water including "[f]lood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge)." Section I – Property, Part B. Exclusions, Section g(1). The Policy does not define "surface water."

Defendants argue that in context of the Policy, "surface water" should be broadly defined to include water on the ground surface, whether that water originated from natural or man-made sources such as broken pipes. Defendants AmGuard Insurance Company And Raphael & Associates' Motion For Summary Judgment On Plaintiff Corporate Lakes Property, LLC's Claim For Declaratory Judgment (Doc. #30) filed September 20, 2022 at 8–15. On the other hand, Corporate Lakes argues that the phrase "surface water" is limited to water from melted "snow, falling rain, or rising springs, lying or flowing naturally on the earth's surface" and does not include water from man-made structures such as pipes. Plaintiff's Opposition To Defendants AmGuard Insurance Company And Raphael & Associates' Motion For Summary Judgment (Doc. #29) filed September 20, 2022 at 10 (citation omitted). In the alternative, Corporate Lakes argues that the

phrase "surface water" is ambiguous and that the Court should construe the ambiguity against AmGuard.  Id. at 11.

The phrase "surface water" is ordinarily understood to mean "[w]ater lying on the surface of the earth but not forming part of a watercourse or lake."  Black's Law Dictionary (11th ed. 2019); 11 Couch on Insurance § 153:50 (3d ed. 2022) ("Surface water is water diffused over the surface of the land.  Any water on the earth's surface, including water from rising groundwater, may be surface water unless or until it forms some more definite body of water.").[1]  In other words, "surface water" ordinarily includes "all water which is open to the atmosphere and subject to surface runoff."  40 C.F.R. § 141.2 (definition under Safe Drinking Water Act).

The context of the water exclusion in the Policy here suggests that a reasonably prudent insured would understand "surface water" in a similar manner.  In contrast to subpart four of the water exclusion which describes generally "[w]ater under the ground surface," a reasonably prudent insured would understand "surface water" in subpart one of the exclusion to mean the opposite, i.e. water on the ground surface.

Corporate Lakes argues that the Court should interpret "surface water" to include water only from natural sources such as rain or rising springs, not man-made sources such as pipes.  Even though many definitions of surface water include examples of naturally occurring water, such

---

[1]     See also Richards v. State Farm Fire & Cas. Co., 585 F. Supp. 3d 1083, 1090 (W.D. Tenn. 2022) (ordinary meaning of surface water is "water lying on the surface of the earth but not forming part of a watercourse or lake") (citation omitted); Gannon v. Rumbaugh, 772 N.W.2d 258, 263 (Iowa Ct. App. 2009) (surface waters are "waters on the surface of the ground of a casual or vagrant character, following no definite course, of a more or less temporary existence that spread at random over the ground and are lost to percolation in the soil and by evaporation, and are distinguished from water of creeks, streams, rivers, ponds, and lakes having a substantial existence and a substantially definite location"); State Farm Fire & Cas. Co. v. Paulson, 756 P.2d 764, 771–72 (Wyo. 1988) (difficult to understand how phrase "surface water" can be more plainly labeled; plain meaning of "surface water" is "water on the surface, other than in streams, lakes and ponds").

definitions ordinarily do not exclude water from non-natural (i.e. man-made) sources such as underground or above ground pipes.[2]  In addition, the fact that some definitions limit "surface water" to water from natural sources does not create any ambiguity in the context of the water exclusion here.[3]

A reasonably prudent insured would understand "surface water" in subpart one of the exclusion to mean uncontained water on the surface, whether the source of that water is from a natural, man-made or unknown source.  The water exclusion does not explicitly limit the source of "surface water."  Indeed, the exclusion states that it "applies regardless of whether any of the

---

[2]    See Black's Law Dictionary (11th ed. 2019) (surface water "*most commonly* derives from rain, springs, or melting snow") (emphasis added); Richards, 585 F. Supp. 3d at 1090 (same); see also Fenmode, Inc. v. Aetna Cas. & Sur. Co. of Hartford, Conn., 6 N.W.2d 479, 481 (Mich. 1942) (surface waters commonly understood to be "waters on the surface of the ground, *usually* created by rain or snow, which are of a casual or vagrant character") (emphasis added); 11 Couch on Insurance § 153:50 ("*Typically*, surface water is created by rain or other precipitation.") (emphasis added).  But see Heller v. Fire Ins. Exch., a Div. of Farmers Ins. Grp., 800 P.2d 1006, 1008–09 (Colo. 1990) (surface water is "water from melted snow, falling rain, or rising springs, lying or flowing naturally on the earth's surface, not gathering into or forming any more definite body of water than a mere bog, swamp, slough, or marsh, and lost by percolation, evaporation or natural drainage.  Surface water is distinguished from the water of a natural stream, lake, or pond, is not of a substantial or permanent existence, has no banks, and follows no defined course or channel.") (footnotes omitted); Hatley v. Truck Ins. Exch., 495 P.2d 1196, 1197 (Or. 1972) ("surface water," particularly when used in conjunction with "flood, waves, and tidal water," intended to mean water "diffused over the surface of the ground, derived from falling rains or melting snows") (citation omitted).

[3]    The Kansas Supreme Court and Kansas Court of Appeals have not addressed the meaning of "surface water" in the context of an insurance policy.  In Rait v. Furrow, 74 Kan. 101, 85 P. 934 (1906), in determining whether defendant had obstructed a "natural water course" or "surface water," the Kansas Supreme Court quoted a definition of surface water as water "which is diffused over the surface of the ground, derived from falling rains and melting snows."  85 P. at 936 (quoting Crawford v. Rambo, 7 N.E. 431 (Ohio 1886)).  The Kansas Supreme Court noted, however, that the "origin of the water" alone did not determine whether defendant had obstructed a "natural water course" or "surface water."  Id.  In any event, because Rait cited a legal definition of "surface water" to determine riparian rights, it does not provide guidance on how a reasonably prudent insured would interpret "surface water" in the Policy here.

above [types of water described] in Paragraphs  (1) through (5), is caused by an act of nature *or is otherwise caused*."  Section I – Property, Part B. Exclusions, Section g. (emphasis added); see Citi Gas Convenience, Inc. v. Utica Mut. Ins. Co., No. CV 15-6691, 2016 WL 492474, at *4 (E.D. Pa. Feb. 9, 2016) (because policy clearly and plainly excludes damage from "surface water" that "is caused by an act of nature or is otherwise caused," phrase "surface water" encompasses water on the surface from natural and man-made sources).  In addition, the Policy cites an example of when the water exclusion applies, which supports an interpretation that the source of the surface water is immaterial.  The Policy states that "[a]n example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water."  Section I – Property, Part B. Exclusions, Section g. This example suggests that "surface water" includes water that is uncontained on the surface— whether that water originates from rain, rising springs or the failure of "a dam, levee, seawall or other boundary or containment system" such as an above ground or underground pipe.  Id.  Similar to a pipe, a dam, levee and seawall are all man-made containment systems.  Even so, the Policy states that the failure of such non-natural systems to contain water constitutes an example of when the water exclusion applies.  The example in the Policy reinforces to a reasonably prudent insured that as long as water is lying uncontained on the surface of the earth, it is considered "surface water," whether its most recent identifiable source is natural such as rain, a man-made containment system such as a pipe or an unknown source.[4]

---

[4]    See Bull v. Nationwide Mut. Fire Ins. Co., 824 F.3d 722, 725 (8th Cir. 2016) (policy language excluding damage for "water or water-borne material below the surface of the ground" not ambiguous and includes water from a pipe, not only naturally occurring water) (Arkansas law); Tsai v. Liberty Mut. Ins. Co., No. 01-14-00677-CV, 2015 WL 6550769, at *6 (Tex. App. Oct. 29, 2015) (exclusion for damage from water that is "caused by or resulting from human or animal

(continued. . .)

Based on the plain and ordinary meaning of "surface water" in subpart one of the water exclusion, "surface water" caused the Loss to the Corporate Lakes building.[5]  Because the Policy excludes damage that is caused by "surface water," the Court sustains defendants' motion for summary judgment and overrules plaintiff's motion for summary judgment on plaintiff's claims for breach of contract and declaratory judgment.

## II.    Exclusion For Losses Caused By Water Under The Ground

The Policy also excludes coverage for loss or damage caused directly or indirectly by water including "[w]ater under the ground surface pressing on, or flowing or seeping through: (a) Foundations, walls, floors or paved surfaces; (b) Basements, whether paved or not; or (c) Doors, windows or other openings."  Section I – Property, Part B. Exclusions, Section g(4).

---

[4](. . . continued)
forces or any act of nature" not limited to naturally-occurring precipitation); see also Thompson v. State Farm Fire & Cas. Co., 165 P.3d 900, 902 (Colo. Ct. App. 2007) ("The plain language of the policy excludes any loss from water below the surface of the ground that leaks through a foundation, regardless of cause and regardless of whether or not the water arises from natural or external forces.").  But see Auto-Owners Ins. Co. v. United Way, 497 F. Supp. 3d 1115, 1122 (N.D. Ala. 2020) ("surface water" means waters from "natural sources" because dictionary definitions refer to natural sources and policy grouped "surface water" with other natural events such as "waves, tides, tidal waves, storm surge, overflow of any body of water"); Sosa v. Mass. Bay Ins. Co., 206 A.3d 1011, 1018–19 (N.J. 2019) ("surface water" ambiguous because of competing definitions including some that limit definition to waters which fall on the land from the skies or arise in springs).

[5]     See Sypherd Enters., Inc. v. Auto-Owners Ins. Co., 420 F. Supp. 3d 372, 379 (W.D. Pa. 2019) (water from water main break on surface penetrating into building through back wall from water main break is "surface water" under water exclusion); see also T.H.E. Ins. Co. v. Charles Boyer Childrens Tr., 269 F. App'x 220, 223 (3d Cir. 2008) (damage stemmed from "water that first hit the surface as rain, then entered a sewer pipe, and finally became surface water a second time as it flowed down a slope after the pipe ruptured") (Pennsylvania law).  But cf. M & M Corp. of S.C. v. Auto-Owners Ins. Co., 390 S.C. 255, 701 S.E.2d 33, 35–37 (S.C. 2010) (water that exited incomplete drainage system after storm and pooled in parking lot not "surface water" because it did not reach property from natural flow but because of its deliberate containment and diversion by pipe).

Defendants argue that the loss to the Corporate Lakes building is also excluded because water that originated from "under the ground" caused the damage.   <u>Defendants AmGuard Insurance Company And Raphael & Associates' Motion For Summary Judgment On Plaintiff Corporate Lakes Property, LLC's Claim For Declaratory Judgment</u> (Doc. #30) at 15–18.   Corporate Lakes argues that the exclusion for underground water does not apply because even though the water originated below the surface, it was not under the ground surface *when it entered the building*.   <u>Plaintiff's Reply To Defendant's Opposition To Plaintiff's Motion For Summary Judgment</u> (Doc. #34) filed October 18, 2022 at 5.

As explained above, a reasonably prudent insured would understand "surface water" in subpart one of the water exclusion to mean uncontained water on the surface, whether the source of that water is from a natural, man-made or unknown source.   As further explained above, damage from water that originates under the ground but travels along the surface before entering a building is excluded under subpart one because it is surface water.   Based on this understanding of surface water in subpart one, a reasonably prudent insured would understand subpart four of the water exclusion to apply only if at the time the water entered the building, it was under the ground surface.   The Court therefore finds that only subpart one of the exclusion for surface water applies to the Loss here, and not subpart four for "water under the ground."[6]

---

[6]      A reasonably prudent insured would understand that "water under the ground" remains as such when it is in liquid form unless and until it becomes another type of water.   For reasons stated above, the Court concludes that a reasonably prudent insured would understand that "water under the ground" that rises to and travels on the earth's surface becomes "surface water" within the meaning of subpart one.   In the alternative, however, if a reasonably prudent insured would not understand "surface water" to mean water from under the ground that subsequently travels on the surface, such an insured would conclude that the water retains its character as "water under the ground."   <u>See</u> <u>Surabian Realty Co., Inc. v. NGM Ins. Co.</u>, 971 N.E.2d 269, 274 (Mass. 2012) (building damage caused by water that backed up from drain in adjacent parking lot not

(continued. . .)

IT IS THEREFORE ORDERED that Defendants AmGuard Insurance Company And Raphael & Associates' Motion For Summary Judgment On Plaintiff Corporate Lakes Property, LLC's Claim For Declaratory Judgment (Doc. #22) filed August 30, 2022 is **SUSTAINED**.  **The Court grants defendants summary judgment on plaintiff's claims for breach of contract and declaratory judgment.**

IT IS FURTHER ORDERED that Plaintiff's Motion For Summary Judgment (Doc. #24) filed August 30, 2022 is **OVERRULED**.

**The magistrate judge will conduct a scheduling conference to address further proceedings on plaintiff's remaining claim for negligent misrepresentation against Raphael & Associates.**

Dated this 4th day of January, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[6](. . . continued)
"surface water;" at moment of damage, water was "drain or sewer water").  But see Auto-Owners, 497 F. Supp. 3d at 1123 (policy plainly requires water be under the ground surface *when it is* pressing on, flowing or seeping through building entry point).  In other words, a reasonably prudent insured would conclude that water that rises from the ground and travels a short distance on the surface is either "surface water" or water from "under the ground surface" travelling on the surface. In either scenario, damage from such water is excluded under the policy.