## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CORPORATE LAKES PROPERTY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 22-2161-KHV |
| | ) | |
| RAPHAEL & ASSOCIATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Corporate Lakes Property, LLC filed suit against Raphael & Associates, alleging negligent misrepresentation and seeking damages.[1]  This matter is before the Court on Defendant Raphael & Associates's Motion For Summary Judgment (Doc. #81) filed November 3, 2023.  For reasons stated below, the Court sustains in part and overrules in part defendant's motion for summary judgment.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute

---

[1]        Plaintiff also brought claims for breach of contract and declaratory judgment against AmGuard Insurance and Raphael.  In its Memorandum And Order (Doc. #35) filed January 4, 2023, the Court granted summary judgment to defendants on both claims, leaving only plaintiff's claim for negligent misrepresentation against Raphael.

requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

**Factual Background**

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.[2]

---

[2]     Initially, the Court addresses the form of the parties' briefing and their compliance with District of Kansas Local Rule 56.1, which requires parties moving for summary judgment to begin their supporting brief with a section that contains a concise statement of material facts as to
(continued. . .)

Russell Fieger and Ronald Essary own Corporate Lakes.  AmGuard insured Corporate Lakes under Businessowners Policy No. COBP108129, which included coverage for plaintiff's building at 6710 West 121st Street in Leawood, Kansas ("the property").

On September 17, 2020 and October 25, 2020, two separate incidents of water-related damage occurred at the property.  Plaintiff submitted claims to Raphael, the third party claim administrator for AmGuard.  Raphael assigned Robert Linsin to serve as its Field Adjuster for both losses.  Throughout Linsin's adjustment of the claims, he acted on behalf of Raphael.  To adjust the losses, Linsin primarily worked with Fieger, Jim DeTar (Chief Financial Officer of Ideal Producers Group and tenant of plaintiff's property) and Boudreaux & Company (plaintiff's general contractor).

AmGuard pays Raphael a flat rate for its adjustment services and Raphael pays Linsin an hourly rate for his adjustment work.  Raphael did not condition or determine Linsin's payment on (1) whether AmGuard ultimately determined that the policy covered plaintiff's losses; (2) which contractors performed repairs at plaintiff's property; or (3) how much the repairs cost.

## I.      September 17, 2020 Loss

The first loss occurred on September 17, 2020, when water leaked into the basement of the property.  Fieger reported the loss to AmGuard the day it occurred and immediately hired a water mitigation company to remove standing water and stop further damage.  Some time shortly after the loss occurred, Linsin inspected the damage and spoke with Fieger.

---

[2](. . .continued)
which they contend no genuine issue exists.  Instead, defendant filed a separate memorandum and statement of facts.  Further, in violation of D. Kan. Rule 7.1(d)(2), defendant's reply exceeds 15 pages.  Raphael neither sought nor received permission from the Court for these departures from the local rules.  Because plaintiff has not objected, the Court accepts them in this instance but cautions counsel that the Court does not look favorably upon excessive filing practices.

On November 2, 2020, by email, Linsin sent an estimate regarding the first loss to Boudreaux.  Boudreaux forwarded the email to DeTar, who forwarded it to Fieger.  In Linsin's email to Boudreaux, he stated: "My settlement totals, as well as a coverage determination will also need to be reviewed and approved by the insurance carrier."  <u>Exhibit H</u> (Doc. #83-8) at 2.  The estimate that Linsin attached to the email included the following disclaimer: "This estimate and any supporting documents will be submitted to the insurance company for review.  This office has not been given any settlement authority.  The insurance company will make the final decision with respect to coverage and the amount payable for the damage claimed."  <u>Exhibit I</u> (Doc. #83-9) at 1.  Some time after December 7, 2020, plaintiff submitted its proof of loss for the first claim.[3]  AmGuard later determined that plaintiff had coverage for the first loss.[4]

## II.     October 25, 2020 Loss

The second loss occurred on October 25, 2020, when water in a window well entered the property and again damaged the basement.  That day, Fieger reported the loss to AmGuard and Linsin visited the property to inspect the damage.  Fieger immediately began reaching out to contractors to begin repairing damage from the second loss.  <u>Fieger Deposition</u> (Doc. #83-4) at 34:11–14.  Before he started hiring contractors to repair the damage, Fieger did not ask Raphael or AmGuard whether the policy covered the second loss.  Fieger testified that after the second loss, Corporate Lakes "already had the cleanup crew there [from the first loss] so they were already cleaning up" and they "start[ed] plugging away" on the new damage.  <u>Id.</u> at 8–10.

---

[3]     Plaintiff did not specify when it sent its proof of loss; the Court assumes that plaintiff sent the form after the point in which it is dated (December 7, 2020).

[4]     Neither party has submitted evidence which specifies when AmGuard determined that the policy covered the first claim.

Early in his adjustment of the second loss,  Linsin advised Fieger that to "keep costs under control," he and/or Raphael must approve any bids for repair work before AmGuard would pay for them.  See id. at 34:17–20.  Linsin testified that he and Fieger reached a "final agreed cost of repairs, pending approval, consideration, review by either the desk adjuster of the carrier or both." Linsin Deposition (Doc. #83-10) at 38:8–11.  In a chain of emails dated November 9, 2020 between Linsin, Fieger, DeTar and Boudreaux, Linsin urged the group to schedule tile restoration soon and stated that "[a]pproval has been given" for the work.  Exhibit 7 (Doc. #88-7) at 3, 7–8.

In a letter to plaintiff dated January 15, 2021, Raphael "on behalf of AmGuard" declined coverage for the second loss.  Exhibit A  (Doc. #83-1) at 3.  The letter stated that "[o]ur investigation reveals the water infiltration into the building was caused by a failed window.  The window failed due to pressure from water escaping from under the ground surface."  Id.  Plaintiff asked Raphael to reconsider, but it again declined coverage.  Exhibit C (Doc. #83-3) at 3.

## III.    Procedural History

On March 30, 2022, in the District Court of Johnson County, Kansas, Corporate Lakes filed suit against AmGuard and Raphael.  Corporate Lakes brought a claim for breach of contract against both defendants for AmGuard's denial of coverage of the second loss and sought a declaration that the policy provided coverage.  In addition, Corporate Lakes brought a claim against Raphael for negligent misrepresentation.  On April 29, 2022, defendants removed the case to federal court.

On January 4, 2023, the Court sustained Defendants AmGuard Insurance Company And Raphael & Associates' Motion For Summary Judgment On Plaintiff Corporate Lakes Property, LLC's Claim For Declaratory Judgment (Doc. #22) filed August 30, 2022, granting defendants summary judgment on plaintiff's claims for breach of contract and declaratory judgment.

**Analysis**

As best the Court can ascertain from the <u>Pretrial Order</u> (Doc. #80) filed October 31, 2023,

plaintiff alleges that Raphael negligently made the following misrepresentations through Linsin,

its agent:[5]

1. The AmGuard policy covered plaintiff's second claim.  <u>Id.</u> at 4 (following second loss, Linsin "determined that coverage existed" and told plaintiff that "everything would be covered").

2. Raphael would combine plaintiff's claims for the first loss with its claims for the second loss.  <u>Id.</u> ("Linsin told Corporate Lakes and Ideal Producers Group that he would manage both claims at one time—the first claim for which he was already on and the new, second claim for water damage.  Linsin said that, to expedite recovery, he would finalize the earlier claim and then incorporate the rest of the repair costs into the second claim.").

3. AmGuard had approved certain bids for repair work associated with the second loss, including tile restoration and carpet replacement, and the work should proceed.  <u>Id.</u> at 4–5 (Linsin "provide[d] direction as to what Raphael and AmGUARD were approving on both claims," emails show that "Linsin directed the work, approved the work and costs, negotiated with contractors, and approved bids" and Linsin "personally approv[ed] building materials" and "the work" for the second loss).

Plaintiff alleges that these statements caused it to believe that AmGuard determined that it had

coverage for the second claim, and caused it to pay for repairs which AmGuard did not cover.

Raphael seeks summary judgment on plaintiff's negligent misrepresentation claim.  To

prove a claim for negligent misrepresentation under Kansas law, plaintiff must show that (1) in the

course of Raphael's business, or in a transaction in which it has a pecuniary interest, it failed to

exercise reasonable care or competence in obtaining or communicating false information;

(2) plaintiff reasonably relied on the false information; (3) Raphael supplied the information for

plaintiff's benefit and guidance; and (4) plaintiff suffered damages.  <u>Rinehart v. Morton Bldgs.,</u>

---

[5]      Plaintiff does not set forth in the pretrial order the exact misrepresentations that Raphael allegedly made or under what circumstances it made the statements.

_Inc._, 297 Kan. 926, 937, 305 P.3d 622, 630 (2013); Stechschulte v. Jennings, 297 Kan. 2, 22, 298 P.3d 1083, 1098 (2013). Negligent misrepresentation does not apply to statements of future intent. Bittel v. Farm Credit Scvs. of Central Kansas, P.C.A., 265 Kan. 651, Syl ¶ 7, 962 P.2d 491, 501 (1998); see also Graphic Techs., Inc. v. Pitney Bowes, Inc., 998 F. Supp. 1174, 1179 (D. Kan. 1998) (only misrepresentations of pre-existing or present facts constitute negligent misrepresentation). Whether the alleged misrepresentations involved present fact, opinion or future intent is a question of law. Id.

Raphael argues that the Court should grant summary judgment on plaintiff's claim because plaintiff cannot meet the first and second elements of a claim for negligent misrepresentation. Specifically, Raphael argues that the alleged misrepresentations do not constitute negligent misrepresentation because they (1) involved future intentions; (2) regarded an intention to perform an agreement; (3) did not include affirmative representations; and (4) did not arise in the course of a transaction in which Raphael had a pecuniary interest because Raphael's compensation did not depend on whether AmGuard covered plaintiff's claims.

Before reviewing the substance of the alleged negligent misrepresentations, the Court first addresses whether Kansas law requires that Raphael have a pecuniary interest in the alleged misrepresentations for them to form the basis for a negligent misrepresentation claim.

## I.    Whether Raphael Had A Pecuniary Interest In The Claim Adjustment Process

Raphael argues that it is entitled to summary judgment because the compensation of Raphael and Linsin did not depend on AmGuard's coverage determinations, so plaintiff cannot prove that Raphael had a pecuniary interest in the transaction at issue. Plaintiff argues that Kansas law does not require it to prove that Raphael made the alleged misrepresentation both in the course of its business _and_ during a transaction in which it had a pecuniary interest. Plaintiff asserts that

it need only prove one—either that Raphael made the statements in the course of its business or in a transaction in which it had a pecuniary interest.

The first element of a claim for negligent misrepresentation requires that someone supply false information "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest." Rinehart, 297 Kan. at 926.  Kansas Jury Instructions support a reading of the first element to mean that plaintiff may, but is not required to, prove both sets of factual circumstances.[6]  See Kan. Civ. Pattern Jury Instructions 4th 127.43 ("One who, in the course of *[(his) (her)][(business) (profession) (employment) (any transaction in which [he] [she] has a pecuniary interest)]*, supplies false information for the guidance of another person in such other person's business transactions, is liable for damages suffered by such other person caused by reasonable reliance upon the false information." (emphasis in original)).  In particular, the jury instructions contain a placeholder which provides alternative iterations of the first element of a claim for negligent misrepresentation and permits a court to select whether a party made the statement in the course of its business, profession or employment or in a transaction in which it had a pecuniary interest.  See id.

Proof that Raphael supplied the allegedly false information in the course of its business is sufficient for plaintiff to claim negligent misrepresentation.[7]

---

[6]     Other courts which have applied the Restatement (Second) of Torts § 552 (1976) to claims for negligent misrepresentation, which Kansas chose to adopt in Mahler, 255 Kan. at 604, do not require a party to prove that the representation occurred in both contexts.  See, e.g., Sain v. Cedar Rapids Cmty. Sch. Dist., 626 N.W.2d 115, 125 n.3 (Iowa 2001) (negligent misrepresentation limited to statements made "by a person whose business it is to provide information, *or* the person otherwise has a pecuniary interest in the transaction in which the person supplies the information." (emphasis added)).

[7]     Furthermore, based on the Restatement's broader definition of "pecuniary interest," (continued. . .)

## II.     Representations That The Policy Covered Plaintiff's Second Claim

Plaintiff concedes that it does not have evidence that Linsin directly discussed coverage for the second claim.  See Plaintiff Corporate Lakes Property LLC's Memorandum In Opposition To Defendant Raphael & Associates' Motion For Summary Judgment (Doc. #88) filed December 8, 2023 at 8.  Plaintiff argues that Linsin believed that the policy covered the second claim, and cites Raphael's internal report dated October 30, 2020.  There, under a heading labeled "Underwriting or Coverage Concerns," Linsin writes that his inspection "revealed no underwriting or coverage concerns."  Exhibit 19 (Doc. #88-19) at 4–8.  Plaintiff does not contend, however, that Linsin or Raphael sent this report to plaintiff at any point during the adjustment.  Therefore it cannot form the basis of plaintiff's claim for negligent misrepresentation.

On this record, plaintiff has not demonstrated a genuine dispute of material fact whether Raphael represented that the policy covered the second claim.  The Court sustains Raphael's motion for summary judgment with respect to the first alleged misrepresentation.

## III.     Representations That Raphael Combined Its Adjustment Of Plaintiff's Two Claims

Plaintiff alleges that shortly after Linsin inspected the second loss, he stated that he intended to combine his adjustment process for the two losses.  According to plaintiff's allegations, this representation led it to believe that AmGuard had found coverage for the second claim, so

---

[7](continued. . .)

it appears likely that Raphael did have such a pecuniary interest.  The Restatement defines "pecuniary interest" to include transactions in which a defendant "stand[s] to profit indirectly." Restatement (Second) of Torts § 552 cmt. d.  Thus, even if AmGuard's compensation to Raphael and Linsin did not depend directly on the outcome of AmGuard's coverage determinations, Raphael does indirectly profit from its adjustment services and thus likely has a pecuniary interest in these transactions.  Accordingly, even accepting Raphael's argument regarding plaintiff's need to prove a pecuniary interest, Raphael would not be entitled to summary judgment on that issue.

plaintiff paid for repairs that AmGuard later refused to cover.[8] The pretrial order does not specify what specific comment Linsin allegedly made, but in response to Raphael's motion, plaintiff cites Fieger's testimony that either on the day of the second loss (October 25, 2020) or a day or two after, Linsin said, "we'll just combine these two claims into one and proceed from there." Fieger Deposition (Doc. #88-2) at 33:23–25; see also id. at 34:4–5.

Raphael addressed this statement for the first time in its reply. Defendant Raphael & Associates's Reply Memorandum In Support Of Its Motion For Summary Judgment (Doc. #92) filed December 28, 2023 at 18, 22. Raphael argues that the undisputed facts demonstrate that plaintiff did not rely on Linsin's alleged representation that he would combine the claims because plaintiff submitted its proof of loss for the first claim some time after December 7, 2020—at least a couple of months after Linsin allegedly stated that he would combine the two claims. Sworn Statement In Proof Of Loss (Doc. #92-2). According to Raphael, plaintiff's submission of a separate proof of loss for the first claim demonstrates that plaintiff did not actually believe that Raphael had combined its adjustment and plaintiff must have understood that AmGuard viewed the claims as separate.

This Court ordinarily does not consider new arguments and evidence offered for the first time in a reply brief. Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC, No. 16-1094-JTM-TJJ, 2018 WL 489100, at *1 (D. Kan. Jan. 19, 2018) ("[T]he Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have

---

[8]     Apart from generally stating that it paid to refinish the basement, plaintiff  has not presented evidence which specifies the repairs it paid for that AmGuard later refused to cover.

been made in the first instance.").[9]  Because Raphael did not raise this argument in its opening memorandum, the Court does not consider it.  The Court therefore overrules Raphael's motion for summary judgment on plaintiff's negligent misrepresentation claim based on Linsin's alleged representation that he would combine adjustment of the claims.

## IV.   Representations That Raphael Had Approved Bids To Repair Damage From The Second Loss

Plaintiff alleges that although AmGuard later denied coverage for the second claim, Raphael represented that it had approved bids for repair work associated with the second claim and directed that work to proceed.  The pretrial order does not set out specific statements that support plaintiff's allegation.  It merely states that Linsin "provide[d] direction as to what Raphael and AmGUARD were approving on both claims" and that numerous emails show that Linsin "directed the work, approved the work and costs, negotiated with contractors, and approved bids." Pretrial Order (Doc. #80) at 4.

Raphael argues that the alleged misrepresentations do not constitute negligent misrepresentation because (1) it could not have approved contractor bids in the course of its business as an insurance adjuster; (2) plaintiff began refinishing the basement before it discussed coverage with Raphael and thus did not rely on the alleged statements; and (3) even if plaintiff did rely on the alleged statements, it did not justifiably rely on them because plaintiff received its disclaimer that Raphael did not have settlement authority and only AmGuard could make final decisions with respect to coverage.

---

[9]        Given that the pretrial order does not set forth the exact misrepresentations that Raphael allegedly made that form the basis of plaintiff's claim, the Court is not convinced that Raphael could have made these arguments in its opening brief supporting summary judgment. Regardless, plaintiff has not requested leave to file a surreply and thus has not had the opportunity to address this argument and evidence.

In support of its allegation that Raphael represented that AmGuard had approved repairs for the second loss, plaintiff cites an email chain dated November 9, 2020 in which Linsin tells Fieger that "[a]pproval has been given" for tile restoration work and urges Fieger, DeTar and Boudreaux to schedule the work soon.  Exhibit 7 (Doc. #88-7) at 3, 7–8.[10]  The Court cannot ascertain, and neither party has established, whether the tile restoration work relates to plaintiff's first loss, second loss or both losses.  Regardless, viewing these emails in a light most favorable to plaintiff, these emails show that Linsin did specifically approve a bid for tile restoration work and urged the parties' work to proceed.  Linsin's statement that approval "has been given," easily allows a reasonable interpretation that AmGuard had approved the work.  Therefore, if the tile restoration related to plaintiff's second claim, plaintiff has raised a genuine dispute of material fact whether it justifiably understood that the policy covered plaintiff's second claim.  On this record, the Court overrules Raphael's motion for summary judgment regarding its representation related to the tile restoration work.  Plaintiff has not presented evidence that Linsin directly approved any other repairs and thus Raphael is entitled to summary judgment as to any other repairs.[11]

_____

[10]      Plaintiff cites other evidence to support its allegation that before AmGuard determined coverage, Linsin approved and coordinated repairs for the second loss.  The Court has reviewed this evidence and it does not establish that Linsin approved repairs apart from tile restoration work.  The Court therefore limits its analysis to Linsin's representations regarding tile restoration.  To the extent that plaintiff can establish at trial that the tile restoration related to the second claim, plaintiff's recovery is not necessarily limited to the tile work because it could prove that it reasonably assumed that AmGuard had approved coverage for other repairs related to the second claim.

[11]      Given that plaintiff has only presented evidence that Raphael approved tile restoration, the Court addresses Raphael's additional arguments only with regard to that representation.  Raphael argues that Linsin could not have approved repairs in the course of his business as an insurance adjuster and cites Linsin's testimony that he did not have authority to approve repairs.  Defendant's Statement of Uncontroverted Material Facts (Doc. #83) filed November 3, 2023, ¶¶ 20–21 (citing Linsin Deposition (Doc. #83-10) at 14:25–15:1, 16:7–15,

(continued. . .)

**IT IS THEREFORE ORDERED** that <u>Defendant Raphael & Associates's Motion For Summary Judgment</u> (Doc. #81) filed November 3, 2023 is **SUSTAINED in part and OVERRULED in part**.  The motion is sustained with respect to plaintiff's claim that Raphael & Associates negligently misrepresented that the policy covered the second loss.  Raphael & Associates' motion is overruled on plaintiff's claims that (1) Raphael & Associates would combine its adjustment of plaintiff's two claims and (2) the policy would cover tile restoration that Raphael & Associates approved.

Dated this 16th day of January, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[11](. . . continued)

81:19–82:6, 147:2–25.  When one "steps entirely outside of" the course of their business and provides false information, "it is not to be regarded as given in the course of his business [] since he has no other interest in it, it is considered purely gratuitous."  Restatement (Second) of Torts § 552.  AmGuard pays Raphael and its agents to adjust claims, however, and communications to AmGuard insureds are not, as a matter of law, outside the scope of Raphael's business.

Raphael also argues that plaintiff did not justifiably rely on Linsin's approval of tile restoration given that plaintiff had already hired a contractor for emergency water mitigation. Plaintiff responds that it did rely to its detriment on Linsin's approval because it only took steps to mitigate the damage and did not start to refinish the basement until after Linsin's statement. Plaintiff cites DeTar's declaration and Linsin's deposition that before Linsin's approval of a scope of repairs for the second loss, plaintiff only began emergency mitigation work to stop the water leak, remove standing water and take out damaged materials.  <u>DeTar Declaration</u> (Doc. #88-20), ¶ 14; <u>Linsin Deposition</u> (Doc. #88-1) at 58:19–22.  On this record, plaintiff has demonstrated a factual issue whether it began to refinish its basement or solely took efforts to mitigate damage before Linsin approved tile restoration on November 9, 2020.